(54 App. Div. 500.)

BRYANT v. ALLEN et al.

(Supreme Court, Appellate Division, First Department. November 23, 1900.)

1. RESULTING TRUSTS—EQUITABLE LIEN.

Where plaintiff claimed to be the equitable owner of property, on the ground that the same had been purchased with her money, given defendant for the purchase of the property, and it did not conclusively appear that all the money used belonged to plaintiff, but it did appear that a portion was hers, the fact that the entire sum had not been furnished by plaintiff did not preclude her from enforcing an equitable lien on the property for the amount furnished.

2. SAME—PURCHASER—GOOD FAITH—EVIDENCE.

Where plaintiff was in possession of premises, and there was a lis pendens on file in an action in which she claimed ownership against the one having the title, and he conveyed the premises for a nominal consideration, the burden was on the purchaser, as against plaintiff, to show the bona fide character of the conveyance to him.

3. SAME—PLEADINGS—RELIEF—CONSISTENCY WITH COMPLAINT.

Where a complaint alleged that defendant agreed to purchase property for plaintiff and have the title made in her name, and that he purchased it with her money, taking title in his name, though the complaint prayed the deed to be declared void, and for such other relief as was proper, an answer having been interposed, and the ownership of the money used in the purchase having been litigated, a judgment declaring an equitable lien for the amount of money furnished by plaintiff and used in the purchase of the property might have been properly entered,

since plaintiff was entitled to any relief consistent with the complaint and embraced within the issues.

**4. SAME—APPEAL—DECISION OF LOWER COURT—OPINION.**

On appeal to the appellate division, the opinion of the trial court may be looked to, to ascertain the grounds for the lower court's disposition of the case, since by Gen. Prac. Rule 41 the opinion of the trial court is made a part of the record, and it is required that, in any case in which an opinion shall have been written by the trial court, it shall appear in the appeal book, or its absence be accounted for by affidavit.

**5. SAME—RESULTING TRUST—EVIDENCE.**

Where plaintiff claimed to be the equitable owner of property, on the ground that the same had been purchased with her moneys given defendant for the purchase of the property, title to be taken in her name, and complainant testified that the money was given her at different times and deposited in her bank, and that she sent it to defendant to purchase the property, and he testified that she was only the custodian of the money, it having been given her originally by him, and in his letters to her he had referred to the money as hers, and as to her being made comparatively rich by it, and stated that he had no right to it, unless by her will, there should have been a finding that the money was the property of plaintiff.

**6. SAME—ESTOPPEL—DEEDS—EVIDENCE.**

Where complainant claimed to be the equitable owner of real estate, title to which was in defendant, on the ground that the money with which the same was purchased was furnished by her on an understanding that title should be taken in her name, and it appeared that subsequent to the purchase of the property she had requested defendant to give her a deed of the same, and he handed her thereafter a deed which declared that the property was conveyed to her in trust to receive the rents, and after paying charges to account to him for the balance of them, and to reconvey at the end of five years if both parties should then be living, but, if he died within the five years, the title to vest in her absolutely, and she testified that she never knew that the deed was other than an unconditional conveyance until shortly before her suit, and he never referred to it as other than a power, and her acts after the receipt of the deed were merely such as she might have performed under a power, retention of the deed by her, and rendering accounts to defendant for rents after such deed, did not estop her from asserting her equitable ownership.

Ingraham, J., dissenting.

Appeal from special term, New York county.

Suit by Emily Bryant against Louis J. Allen and others. From a judgment in favor of defendants, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Ferdinand E. M. Bullowa, for appellant.

Abram Kling, for respondents.

PATTERSON, J. The plaintiff, claiming to be the equitable owner and in actual possession of real estate described in the complaint, brought this action, praying that a deed of the premises made by the defendant Allen to the defendant Seaver be declared null and void and in fraud of her rights; that Seaver be enjoined and restrained from interfering with her possession or that of her tenants, and from bringing any action or proceeding against her or them,—and for other, further, or different relief as to the court might seem proper and just. The equitable ownership claimed by

the plaintiff was founded upon an asserted resulting trust growing out of the purchase of the real property (two adjoining apartment houses in the city of New York) with money belonging to and furnished by the plaintiff under a promise of Allen to take title in her name, which promise he violated without her consent or knowledge, and took title in his own name, and subsequently, without her knowledge or acquiescence, conveyed the property, for a nominal consideration, to the defendant Seaver, who, the plaintiff declares, had knowledge or notice of her rights and equities in and to the property, or who was put upon inquiry in regard thereto. The trial justice dismissed the complaint on the ground that the evidence showed that all the money actually paid on the purchase of the property did not belong to the plaintiff, and that as a consequence the rule in Schierloh v. Schierloh, 148 N. Y. 103, 42 N. E. 409, applied; it being held in that case that a resulting trust could only arise in favor of a person who paid the whole consideration, and not a part of it merely. The trial justice also held that the plaintiff was estopped from claiming ownership or the existence of a resulting trust because of her acceptance of a deed hereafter to be mentioned.

It is not at all clear, to say the least, that it was not established that all the money actually paid to the vendor at the time of the purchase did belong to the plaintiff. When that purchase was made, Allen used in making it $7,000 of money which the plaintiff remitted to him from England for the express purpose of being invested in the real estate, the title to which he explicitly promised to take in her name. The trial justice declined to pass upon what he regarded a conflict of evidence as to the ownership of that money. Allen also used in the purchase the sum of $3,000, which he had deposited in a trust company in the city of New York in the plaintiff's name, taking back a certificate reciting that the deposit was made for her, and that the money was payable to her order, to be withdrawn by her or by Allen or her assigns; and he informed her of the deposit, and that the money was to be used in the purchase to be made in her name. The court held that the deposit of the money in the trust company did not constitute an irrevocable trust in favor of the plaintiff, but under the rulings in such cases as Martin v. Martin, 46 App. Div. 445, 61 N. Y. Supp. 813, Williams v. Bank, 51 App. Div. 333, 64 N. Y. Supp. 1021, and Harrison v. Totten, 53 App. Div. 178, 65 N. Y. Supp. 725, it may well be argued that the $3,000 did belong to the plaintiff; and as all the cash paid at the time of making the contract of purchase, and when title was taken, was $10,000, had the judge at special term found that the $7,000 was the actual money of the plaintiff, the resulting trust might now be declared. The case differs from those in which it has been held that a trust is not effectively created by one who retains possession of moneys or securities, and who simply states that he holds the moneys or securities in trust. But, without definitely passing upon that trust feature of the deposit, we are of the opinion that even if a resulting trust, within the rule in the Schierloh Case, did not arise as to the realty, the plaintiff was entitled,

on the pleadings and proofs, to relief, to the extent of a judicial declaration that she has an equitable lien upon the real estate for the $7,000. It was incumbent upon the plaintiff, of course, to maintain that that lien arose as against the defendant Seaver as well as the defendant Allen, and there is enough in the record to show the plaintiff's right to it as against both. Allen conveyed the premises to Seaver for a nominal consideration of $10. At the time the conveyance was made, there was a lis pendens on file in an action which the plaintiff, claiming ownership, had brought against Allen, and she was in possession of the premises. Those circumstances, we think, were sufficient to charge Seaver with notice, and throw upon him the burden of showing the bona fide character of the conveyance to him, and to make out prima facie that, with respect to the plaintiff's right, he (Seaver) stood in no better position than his grantor. If the $7,000 furnished by the plaintiff actually belonged to her, and was supplied to the defendant Allen to be used in the purchase of the property in her name, and he violated that promise and the trust and confidence reposed in him, and without her knowledge took the title in his own name, her money being traced into the purchase, we have no doubt that an equitable lien for the amount should be declared to exist upon the property. Day v. Roth, 18 N. Y. 448; Mann v. Benedict, 47 App. Div. 173, 62 N. Y. Supp. 259, and cases therein cited.

It is argued, however, that an equitable lien cannot be declared, because of the condition of the pleadings in the case. On an examination of the complaint we find its allegations broad enough to authorize that relief. It is set forth that the defendant Allen promised and agreed to purchase the property for the plaintiff, and to have title thereto made in her name; that he did purchase the property with her money, received by him for that specific purpose; and that he had the property conveyed to himself without her consent or knowledge. Those are facts upon adequate proof of which the existence of a lien in equity might be adjudged; and the proof was made. There is no difficulty in molding relief according to the allegations and proof. Under the doctrine in Murtha v. Curley, 90 N. Y. 377, even if the prayer for judgment was defective for one kind of equitable relief, an answer having been interposed, the plaintiff could have any relief consistent with the case made by the complaint and embraced within the issues. The ownership of the $7,000 was embraced within the issues and was seriously litigated; but the learned justice refused to pass upon the question of that ownership, stating in his opinion that, in the view he took of the case, it was unnecessary to determine a conflict of evidence on that subject. It has been intimated that in support of the judgment it will be presumed that the trial judge found that the $7,000 did not belong to the plaintiff, and that his opinion cannot be referred to, to ascertain the grounds or reasons for his disposition of the case. That such use cannot be made of an opinion of a lower court in the court of appeals has been very frequently stated by that tribunal, but in this court a contrary rule prevails. It is required that in all cases in which opinions have been written by the court

below they shall appear in the appeal book, or their absence therefrom be accounted for by affidavit; and by rule 41 of the general rules of practice the opinion of the court below is made, in express terms, a part of the record. What is mentioned in the opinion is sufficient to show that the trial justice did not consider the subject of the ownership of the $7,000 of any importance. He makes no reference to it in the "short form" of his decision, but, if he had found as a fact that that money did not belong to the plaintiff, we should have felt called upon to reverse the judgment, in consequence of the overwhelming proof that it did belong to her. The only witnesses examined concerning that money were the plaintiff and the defendant. She swears that it was given her in Europe, in three sums, at various times, before the purchase of the real estate; that she deposited it in her bank at Brighton, in England; and that, under the promise respecting its investment in real estate in New York, she remitted it to the defendant Allen. His testimony is that she was only the custodian of his money. He is contradicted flatly in that by his own letters to her. He not only refers to the money as hers, and as to her being made comparatively rich by it, but in one of those letters he recognizes the fact that he has no right to it, and the only way by which it could ever become his would be by a will made by the plaintiff in his favor.

But the trial justice further decided that the plaintiff was not entitled to relief because of an estoppel arising from the acceptance of a deed from Allen executed in January, 1898, by which he conveyed the premises to her, according to its terms, upon trust to receive the rents, etc., and after paying taxes, interest on mortgages, and other charges, to account to him for the balance of such rents; to reconvey to him the premises at the expiration of five years if both parties should be then alive, but if he died before her during the five years the title to vest in her absolutely, discharged from the trust, and if she predeceased him during the five years the property to revert to him. There is in this deed a clause of acceptance of the trust. The instrument was signed and acknowledged by Allen alone. It appears upon its face to be one intended for execution by both parties, but it may be that, as a deed poll, its acceptance with knowledge of its contents, and the enjoyment of an estate under it, or the assumption and performance of trust duties covenanted therein to be performed by the grantee, would work an estoppel as to admissions and covenants. Dock Co. v. Leavitt, 54 N. Y. 35. It is evident, however, in the present case, that the trial justice only considered this question of estoppel as it related to the existence of a resulting trust of the whole property, and not to the plaintiff's right to an equitable lien for her money advanced to make the original purchase. There is no account given in the evidence of the origin of this trust deed, except that furnished by the plaintiff, who testifies that just before the defendant Allen was leaving for California, in January, 1898, she asked him for a deed to vest the title in her, and that he subsequently handed to her the instrument in question, which she took without examination and retained, not knowing its provisions until a short time before

she brought her suit against Allen, and then only upon consultation with her counsel. It is a curious fact that neither the plaintiff nor Allen seems to have known the exact nature of this conveyance. He makes no allusion to it, except as a power of attorney. She regarded it as an absolute deed to her; he as merely constituting her an agent. With this difference in the understanding of the parties, and the acts of the plaintiff after the deed was handed to her being such as might have been performed under a power, we cannot, in the absence of an express finding that both parties were aware of the true nature of the deed, hold that the plaintiff is fully estopped thereby from claiming any right of any kind against the property. We do not think, under the state of the proofs, that we now should hold that the retention by the plaintiff of this deed, and her rendering accounts to Allen after its date, operate as a surrender or commutation of her equitable right to a lien. She did not take under the deed, or enter upon the enjoyment of an actual vested estate, and we are impressed with the belief that she did not understand the real nature of the deed. Her relations with Allen had for years been such that obedience to his requests concerning the administration of the property furnished her uniform rule of conduct. In the very unsatisfactory condition of the evidence, we are not inclined to dispose of the plaintiff's rights on the technical ground of her being estopped from their assertion. On another trial additional evidence may be forthcoming, and the point can then be raised directly respecting the effect of the trust deed upon the plaintiff's rights, in any aspect in which they may be presented.

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

HATCH, J., concurs.

VAN BRUNT, P. J. I concur in the result of the opinion of the court, that a new trial should be had. It seems to me, however, that the money in the trust company became the property of the plaintiff, as much as the $7,000, which she certainly owned. It was deposited in her name, subject to her control, she was given the power to draw it from the trust company, or assign her right to the same, and it is apparent that the right of the defendant to draw the money was simply as trustee or agent of the plaintiff. It seems to have been as complete a gift as was established in any of the savings-bank cases, with which we are all so familiar.

O'BRIEN, J., concurs.

INGRAHAM, J. (dissenting). I do not concur with Mr. Justice PATTERSON. The complaint alleges that on the 25th of May, 1895, and at various other times, the defendant Louis J. Allen received from the plaintiff a large sum of money wherewith to purchase the property known as "42 and 44 West Sixty-Sixth Street," in the city of New York, and promised and agreed with the plaintiff to purchase the aforesaid property, and to have title thereto

conveyed to said plaintiff; that the defendant Allen did purchase such property with the money of the plaintiff, and received by the defendant Allen for the purpose of purchasing said property as aforesaid, but that said Allen had the title to the property conveyed to himself, and took a deed thereof in his own name, without the consent or knowledge of plaintiff, by whom the consideration for said property was paid as aforesaid; that in June, 1899, the defendant Allen conveyed the premises to the defendant Seaver, who took the same with notice and actual knowledge of the equities of the plaintiff herein. And judgment is demanded that the deed of the premises therein described, from Allen to the defendant Seaver, be declared null and void, and in fraud of the plaintiff's rights, and that the defendant Seaver be enjoined and restrained from interfering with the possession of the plaintiff and of the plaintiff's tenants to said premises described, and that the defendant Seaver be further restrained and enjoined from bringing any action or actions, proceeding or proceedings, against the plaintiff or the other tenants of the premises, until the final determination of this action, and for such other, further, and different relief as to the court may seem proper and just in the premises. The complaint asks for no relief against Allen, but seems to be based upon the principle that a trust resulted in favor of the plaintiff, and that Allen held it as trustee for her, and that his conveyance of the land to Seaver was a violation of the trust, and entitled the plaintiff, as the cestui que trust, to have such deed from her trustee to Seaver declared void, and Seaver restrained from interfering with the plaintiff's possession of the property. The action was thus brought as an action to enforce such a trust, and was tried as such an action. No demand was made in the court below for any relief based upon an equitable lien, and I think that the plaintiff must stand or fall upon her right to the relief thus asked for. The defendants deny the allegations of the complaint that this property was purchased with the plaintiff's money, and deny that the conveyance to Seaver was in fraud of the plaintiff.

The plaintiff testified upon the trial that this money which she sent to Allen was given to her by him; that the first sum, of £180, was given to her in the spring of 1894, when Allen said, "Here is this money, for you to do with just whatever you like;" and that this was followed by the delivery to the plaintiff of £1,000 in July, 1894, when he said that it "would enable me to invest it in such a way that I could look after my two sisters," and £170 in December, 1894. This money, aggregating $7,017.70, was retained by the plaintiff on deposit in an English bank until 1895, when it was transmitted to New York by three drafts payable to Allen's order, and received by him in June, 1895. A part of it seems to have been deposited with the Metropolitan Trust Company in Allen's own name. On June 5, 1895, Allen made a contract with one Rankin for the purchase of the premises in question, and at that time paid on account thereof the sum of $1,000. This sum was paid by Allen with his own money, as at the time the payment was made the drafts had not been received from the plaintiff; and on July 1, 1895,

when the deed of this property was delivered, Allen paid to Rankin
$9,000 more, which included the money transmitted to him by plain-
tiff, making a total payment upon the delivery of the deed of $10,000.
Allen gave to Rankin at the same time two second mortgages, of
$2,500 each, and the property was conveyed subject to other mort-
gages upon the property; the actual consideration paid therefor
being $55,000. Subsequently Allen paid on account of the mort-
gages held by Rankin the sum of $4,000, making the total amount
paid by Allen $14,000, of which he had received from the plaintiff
about $7,000; and, as a further payment for the property, he had
assumed the payment of mortgages for $40,000. There is also proof
that Allen had deposited with the Metropolitan Trust Company, in
the city of New York, on April 1, 1895, the sum of $3,292.14 in
the name of Emily Bryant, the plaintiff, payable to the said de-
positor, or to Louis J. Allen or her assigns. It is not disputed but
that this was Allen's money, and the object of making the deposit
in the form it was is apparent from a letter from Allen to the plain-
tiff, in which he says that he made the deposit in that form so
that the money would be hers if anything happened to him. The
plaintiff claims that upon such deposit the money became the money
of the plaintiff, and thus it can be said that the whole amount of
the payment of the $10,000 paid as the consideration of the con-
veyance to Allen was the plaintiff's money. It is, however, ap-
parent that no gift of the money to the plaintiff was intended. It
was deposited by a certificate of deposit payable to the plaintiff or
Allen. It was Allen's money. By the form in which the deposit
was made, he continued in control of it; and, when communicating
the fact of having made the deposit to the plaintiff, he stated his
intent in making it, which was inconsistent with the idea of a gift.
The cases cited by the plaintiff, in which deposits made in a savings
bank to the credit of another person, where the depositor or donor
gives up all control of the property, putting it absolutely in the
name of the donee, or where by express words the depositor creates
himself the trustee of the donee, have been upheld as gifts, do
not apply. This transaction shows that there was no intent to
make a present gift. On the contrary, Allen intended to, and did,
retain the custody and control of the money, and subsequently used
it for his own purposes. Assuming that $7,000 of the $10,000 paid
on account of the property at the time of this conveyance was
money of the plaintiff's, still the plaintiff was not entitled to have
a resulting trust declared in her favor in this property; for she did
not pay all of the consideration, and she was not, therefore, en-
titled to the relief demanded, viz. a declaration that the convey-
ance of Allen to Seaver was void. Schierloh v. Schierloh, 148 N. Y.
106, 42 N. E. 409. There was, however, a question of fact pre-
sented upon the trial, as to this $7,000 which the plaintiff sent to
the defendant at his request. The defendant Allen swears that
he delivered this money to the plaintiff for safe-keeping; that he
never gave it to her, and never intended to vest her with the title
to it or give it to her. Allen testified:

"I knew plaintiff in England, and I left in her care at Brighton, England, where she resided, $7,000, which amount she forwarded to me, at my request, at New York, about the time of the purchase of said property. * * * Plaintiff at no time furnished me with any moneys with which to make the purchase of this property, excepting my own money, which I had left with her as above mentioned, and which she returned to me at my request."

Here was a distinct issue of fact as to the ownership of this property, and, by the decision in favor of the defendant, it must be assumed that all disputed questions of fact were disposed of in favor of the defendant,—that the effect of the decision was the same as if there had been a general verdict of a jury, and the same presumptions arise in its support. Amherst College v. Ritch, 151 N. Y. 320, 45 N. E. 876, 37 L. R. A. 305. From the opinion of the court below, it would appear that the court did not pass upon this question of fact, but there is no finding by the court that any of this money was the plaintiff's money, or belonged to her. There is nothing, therefore, to justify a finding that the plaintiff was entitled to any relief, and I do not think we are justified in reversing this judgment.