OBERMILLER *v.* WYLIE *et al.*

(*Circuit Court, W. D. Michigan, S. D.* October 2, 1888.)

1. TRUSTS—EXPRESS TRUSTS—DECLARATION.
   A written instrument, executed in form to be recorded, by which the grantee of land declares that he holds it "in trust for the Indians whose names are hereunto attached, they having paid towards the purchase of the said lands the sums set opposite their names, respectively," to which is attached the list of names and amounts paid. is a sufficient declaration of a trust, in Michigan, in favor of the persons whose names appear in the list.

2. SAME—RIGHTS OF BENEFICIARIES.
   The beneficiaries under the trust will take in proportion to the amount of purchase money paid by each.

3. SAME—PARTITION--IN PROBATE COURT—ACQUIESCENCE.
   Where the probate court, after the death of the trustee, directs the administrators to convey the land in severalty to the beneficiaries, who acquiesced therein, such conveyance will vest the equitable title in the beneficiaries, though the probate court had no power to make the order.

4. DESCENT AND DISTRIBUTION—REALTY—SEIZIN.
   Under the Michigan statute providing that an interest, to pass by inheritance, must be one of which the ancestor had seizin, such equitable title will pass by descent; seizin in law as well as seizin in fact being contemplated by the statute.

In Equity. On demurrer to amended bill, by the defendant Rose.

The bill of complaint in this cause seeks to establish a trust-estate in and quiet the title to certain lands in the county of Emmet and state of Michigan. The essential facts are indicated sufficiently by the opinion. The document relied upon by the complainant, and held by the court to be sufficient as a declaration of the trust alleged in the bill, is in the following form:

"Know all men by these presents, that I, Alexander Nishawakwad, of Little Traverse, Michigan, having received a deed of Francis Pierz, conveying to me the title to the lands below described, viz.: The E. $\frac{1}{2}$ of the S. E. $\frac{1}{4}$ of section thirty-two, (32,) town N., range 5 W., containing eighty acres; also the S. W. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ of section thirty-three, (33,) town 35 N., range 5 W., containing forty acres; also the fractional number section (28,) town 35 N., range 5 West, containing 13 77-100 acres; also fractions No. (2) & (3) of section 12, town 36 N., range 7 W., containing 77 11-100 acres; also fractions No. 1 & 2 of section 32, town 35 N., range 5 W., containing 65 85-100 acres; also fractions No. 1, 2, & 3 of section 33, town N., range 5 W., containing 104 68-100 acres; also having vested in me by patent from the United States the title to the following lands, to-wit: Fractional section No. 28, town 35 N., range 5 W., containing 13 77-100 acres; also the east $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of section 33, town 35 N., range 5 W., containing 80 acres; also fractional section No. 24, town 35 N., range 6 W., containing 12 8-100 acres; also fractions 1, 2, 3, 4, & 5 of section 13, town 35 N., range 6 W., containing 299 17-100

v.36F.no.11—41

acres: Now, be it known that I, Alexander Nishawakwad, do by these presents acknowledge the having received and holding the above-described lands, in trust for the Indians whose names are hereunto attached, they having paid toward the purchase of the said lands the sum set opposite their names respectively.

his
"ALEXANDER  X  NISHAWAKWAD. [L. S.]"
mark.
"Signed and sealed for record in the presence of
"A. S. WADSWORTH. LANI WASSO."

To this instrument was attached a list of the Indians who had contributed for the purchase of said lands and of the sums paid by them respectively.

*Taggart & Denison*, for complainant.

*Fletcher & Wanty*, for defendant Rose.

SEVERENS, J., (*orally, after stating the facts as above.*) The principal ground of the demurrer is predicated on the statute of the state of Michigan in regard to the creation of trusts. It is argued that the effect of the statute upon a conveyance which upon its face denotes an intent to create a passive trust in one for the benefit of another is to vest the whole legal and equitable title in the *cestuis que trustent*, or the beneficiaries, creating no estate, either legal or equitable, in the trustee; and this is undoubtedly so in those cases where the instrument creating the estate is one which upon its face denotes who are to become the beneficiaries of the trust intended to be created; but the statute does not apply in a case where a conveyance is made of property upon trust, passive though it may be, where the trust arises out of the operation of some other instrument or some other means; that is, where the trust is shown independently of the instrument creating the estate. This is affirmed in several cases, and clearly in that of *Loring* v. *Palmer*, 118 U. S. 321, 6 Sup. Ct. Rep. 1073. In the case at bar there was a conveyance in the ordinary form by one Pierz to the Indian, Nishawakwad, and the question arises whether upon the facts alleged in the bill it is shown that the estate was a trust-estate for the benefit of other Indians. It is alleged in the bill that those other Indians contributed the means with which to buy the lands, —quite a large area; the purpose being to have Nishawakwad purchase these lands, and hold them in trust for the benefit of these Indians so contributing. It seemed to be understood by those who furnished the means that Nishawakwad would take a conveyance to himself. Now, if there were nothing in writing independent of that instrument, it would be impossible, under the Michigan statute, to fix upon that instrument the character of a trust; the statutes of Michigan declaring that a trust shall not be created except by writing, and also declaring that no resulting trust can arise on such facts only. But soon after Nishawakwad had obtained the title from Pierz, he executed an instrument manifestly intended to be a declaration of trust. The instrument was informal, but, such as it was, it was executed by him, and acknowledged in form to be recorded. In that instrument he declares that he holds these lands in

trust for those Indians whose names are upon a schedule attached, and who have contributed in the amounts which are specified opposite their names. I think that is a sufficient declaration of trust in behalf of those Indians.

It is argued in behalf of defendant Rose that the instrument is not sufficiently definite in determining the proportions of interest in which these Indians hold through the trust. It is true that in terms it does not specify. It specifies the amount in which each of the beneficiaries had contributed; and, taken in connection with what is alleged in the bill to be the purpose, I think it is fairly to be implied that the trustee intended a declaration in favor of these persons in the proportion which the respective amounts which they had contributed bore to the whole fund contributed. It has been held, and indeed it was in the case to which I just referred in 118 U. S.; that where a trust was created in favor of two or more persons, and the proportion which each was to take was not specified in the writing, if there was nothing to indicate the contrary, the beneficiaries would take in equal shares. That simply establishes the proposition that the trust is not so indefinite as to be nugatory from the fact that the respective interests of the beneficiaries are left to be inferred by implication; and I think the fair implication contained in this instrument is that these beneficiaries were to take in proportion to the respective amounts which they had contributed, and those amounts are specified in the declaration of trust, or in the exhibit which is referred to therein, and which is made part of it.

After this there were certain proceedings in the probate court for the county in which the lands were situated, Nishawakwad having died. These proceedings were, first, the appointment of administrators; and, next, and what is pertinent to the present issue, proceedings had upon a petition filed by certain persons interested in the purchase of Nishawakwad, and which petition was very anomalous in its character. It seemed to be framed upon the theory that the probate court had jurisdiction to order a conveyance by the administrator of the legal estate which Nishawakwad had acquired, for these beneficiaries, under the authority of the statute which authorized the probate court to direct administrators and executors to execute a contract for the sale of land by giving deed. The petition is not in any formal shape, even for that purpose. The order which the probate court made upon it, however, seemed to treat it as being filed under the provisions of the statute to which I have referred, and an order was made by the probate court that the administrators should convey the legal title to the beneficiaries; and it undertook further to state in what proportions it should be conveyed, and further ordered a partition of the lands, so as to have them conveyed to these beneficiaries in severalty. I have no doubt that these proceedings were void for want of jurisdiction in the probate court to take them, and, if nothing further had been done, if that was the end of the facts in reference to that transaction, I should be of the opinion that the action of the probate court was utterly nugatory. But it is alleged in the bill that the commissioners appointed by the probate court for that purpose

set off these lands in severalty wherever the beneficiaries desired them in severalty, and parcels in a lump to several persons where that form of conveyance was agreed upon; and the particular lands in question were conveyed by the administrators, under the order of the probate court, to the three Indians, Asiniwi, or J. A. Stone, as he was known in English, and the heirs of two other Indians, original beneficiaries in the trust. Both had died before these proceedings were taken. And it is further alleged in the bill that this partition and these conveyances were acquiesced in and were satisfactory to all of the parties interested,—by which I understand, and it is so treated in the argument, the beneficiaries under the original trust; and it seems that some, at least, of the persons who were concerned in that transaction have acted upon it by making conveyances. I lay no stress, however, upon this last suggestion, but upon the allegations in the bill, and which must be deemed to be admitted by the demurrer, that the other beneficiaries, who were alone concerned in the mode in which the land should be divided, were satisfied with what was done, and have acquiesced in it; and I am of the opinion that, if that is so, while the probate proceedings would be void if standing alone, yet, when coupled with the assent and acquiescence of the parties interested, and their having acted upon it, it amounts to the creating of an equitable estate in severalty in the lands thus set apart and apportioned, and it would operate to vest in those three Indians, or their heirs, which is the same thing, the equitable title to the lands in question. And it is alleged in the bill, and admitted by the demurrer, that the complainant has by mesne conveyances acquired the interest of all those persons. And it is alleged in the bill, and admitted by the demurrer, that the legal title has passed by mesne conveyances to the defendant Rose,—who, upon the facts as they appear, will stand in no better position than the person from whom he derived his title, namely, Nishawakwad, as there is nothing in the facts exhibited to show any circumstances creating any equitable estate in him. The facts leave him as the bare holder of the legal title, charged with the trust which attached while the title was held by the original trustee, Nishawakwad.

The question is raised in the brief whether this equitable interest which these beneficiaries had was capable of inheritance. This is denied by defendant Rose; and he claims that by the statute, the interest of these beneficiaries, being a mere equitable interest, of which there was no seizin, it did not descend to the heirs, and the statute of Michigan should be applied, in which it is declared that an interest to pass by inheritance must be one of which the ancestor had seizin. But this statute does not necessarily mean a seizin in fact. There are two kinds of seizin: seizin in law, and seizin in fact. The statute includes both of these. The seizin of an equitable interest must, in the nature of things, be intangible. But even in regard to legal estates, it is settled, in the law of Michigan, that an estate passes notwithstanding the ancestor is not at the time of his death seized in fact; by which is meant, in actual possession. It results from these propositions that the complainant has acquired the interest of the

beneficiaries,—the three beneficiaries to whom, or their heirs, the lands were set over in severalty; and that the defendant holds the legal title charged with that trust. Upon these facts it would seem that the bill can be maintained, and the case brought within the equitable jurisdiction of the court.

Other objections to the bill are argued in the brief filed in support of the demurrer, which is a very elaborate one, but these objections are such as should have been put in by special demurrer. The demurrer is general, and can only cover, therefore, the general ground of the bill upon the facts alleged. There is an objection as to multifariousness. There is another objection founded upon the allegation of the bill that the defendant holds some tax titles. It is argued that the bill should specify the particulars in which the illegality of the tax titles consists. It is alleged in the bill that they are invalid, and that they constitute a cloud upon the title; and that allegation is good, as against a general demurrer. The objection, I think, if taken by a special demurrer, would be well taken, because I think that one who files his bill to remove the cloud created by tax deeds is bound to allege the particulars by which the deeds are rendered invalid. Another objection made in the brief in support of the demurrer, and which possibly might have been well taken if there had been a special allegation as a ground of demurrer, is based upon the fact appearing, as it clearly does upon the bill, that certain persons became possessed of these interests, and that they have died leaving heirs, and there being no allegation that those persons owned those interests at their death. Nothing appearing to the contrary, it should be presumed, I think, the demurrer being general, that no disposal was made by the ancestors. In other words, in the absence of any indication to the contrary, it would be presumed that at the death of the ancestors the title remained as stated in the bill. So that on the whole I think that the demurrer must be overruled.

I may say that the questions involved in this case are not without difficulties. They were elaborately argued, especially in the brief for the defendants. I have held the case for some time, and have given it a good deal of attention, and this accounts for the delay. Some of these propositions, and especially the propositions in regard to those probate proceedings, taken in connection with what is alleged in the bill to have been done by the parties who were concerned in those proceedings, give rise to questions of extreme difficulty, but there are analogies which will occur by which the questions, perhaps, may be determined. No case has been cited, and I have not been able to find any which is very closely in point on the facts and circumstances; but an instance of illustration may be found in those cases where it has been decided that upon a judicial sale of property for the purpose of satisfying a mortgage or other lien, although the sale was void, the transaction operates to transfer the equitable interest in the lien to the purchaser. The case is not precisely parallel, but it furnishes an illustration. I cannot see upon what ground or right the court could now overturn—for that would be the effect of a contrary decision—what those beneficiaries did at that

time, and the proceeding which they have acquiesced in.. If they have so acquiesced, they are now bound, and are estopped from disputing its validity. The demurrer of the defendant Rose will be overruled, and leave given to answer.