JOSEPH WALTHER v. WALTER KNUTZEN.

FILED JUNE 30, 1893. No. 4465.

Replevin: EVIDENCE: REVIEW. In an action of replevin the proof failed to show any right of the defendant to the possession of the goods. The judgment was therefore set aside and a new trial granted.

ERROR from the district court of Buffalo county. Tried below before HAMER, J.

Walther v. Knutzen.

*R. A. Moore*, for plaintiff in error.

*Calkins & Pratt, contra.*

MAXWELL, CH. J.

This is an action of replevin brought by the plaintiff against the defendant to recover the possession of " 1 radiator (72 tubes), 2 radiators (24 tubes), 1 radiator (20 tubes); 5 feet soil pipe; 3 pk. 4-inch quarter burds; 2 4x2 ys, 1 2x2 ys; 2 2-inch hubs; 53 inch tees, 22 2½-inch tees; 38 2-inch tees, 12 1½-inch tees, 14 1¼-inch tees, 10 1-inch tees, 8 ¾-inch tees, 11 1-inch tees, 15 ¾-inch tees ; 34 inch ells, 3 2½-inch ells, 2 3-inch ells, 2 2-inch ells, 11 1½-inch ells, 4 ¼-inch ells, 12 1½-inch ells, 4 1-inch ells, 4 ¾-inch ells ; 6 2-inch bends; 25 1½-inch ¼ ells, 2 1-inch ells, 4 ¾-inch ells ; 1 3x4 bushing, 2 2x2½-inch bushing; 1 2¼-inch plug; 19 2-inch lock nuts, 4 1½-inch lock nuts; 1 2½-inch flange union, 1 1¼-inch union, 2 1-inch unions; 23 pins; 1 inch ceiling plate; 15 inch floor plates, 3 1¼ inch floor plates, 2 2-inch floor plates; 11 1¼-inch pipe hangers, 3 1½-inch pipe hangers, 3 2-inch pipe hangers; 4 1½-inch pipe hooks ; 2 3-inch nipples, 2 2½-inch nipples, 8 2-inch nipples, 3 1½-inch nipples; 9 1-inch nipples, 8 ¾-inch nipples; 1 job lot of couplings; 1 6-inch ventilator cap; 2 12x12 slop sinks; radiator tops; 1 11x11 soot door ; 1 lot of scrap pipe ; 448 pounds of mineral wool; 3 2-inch ells, 4 1½-inch ells, 6 1¼-inch ells, 2 1-inch ells; 2¾-inch ells, 3 1½-inch ells (cast), 3 1½-inch ells (malleable) ; 9 2-inch lock nuts, 5 1½-inch lock nuts, 3 1¼-inch lock nuts; 1 1¼-inch union, 1 1½-inch T, 1 1¼-inch T ; 4 2-inch R. & L. couplings, 7 1¼-inch R. & L. couplings, 4 1-inch R. & L. couplings, 6 ¾-inch couplings ; 4 2-inch reducers; 4 bath wastes ; 20 1-inch gate valves, 2 ¾-inch gate valves; 1 sewer and gas trap; 2 ¾-inch cut-offs ; 2 1-inch handles, 1 1¼-inch T handle; 80 lbs. scrap lead; 70 lbs. lead tacks; 533 lbs. lead pipe; 250 lbs. sheet lead; 123 lbs.

2-inch lead pipe, 54½ ft. 4-inch black pipe, 40½ ft. 3-inch pipe, 29 ft. 2-inch galvanized pipe, 15 ft. 1½-inch galvanized pipe, 41 ft. 1¼-inch pipe (gal.), 24 ft. 1-inch pipe (gal.), 62 ft. 2-inch black pipe, 31 ft. 1½-inch black pipe, 37 ft. 1-inch black pipe, 15 ft. ¾-inch black pipe; 225 joints soil pipe; 29 ¼-inch bends; 5 ½-inch traps; 2 tees; of the value of $250."

The answer is a general denial.

On the trial of the cause the jury returned a verdict for the defendant and found the value of the property to be $250, and the damages $1, and judgment was rendered on the verdict.

The testimony tends to show that in the year 1887 the defendant had a contract for the erection of certain buildings pertaining to the industrial school near Kearney; that the plaintiff was a subcontractor under him to perform certain plumbing required in the building; that the contract price for this plumbing was between $5,000 and $6,000; that the plaintiff gave a bond for the faithful performance of the work, duly signed by a number of sureties; that the plaintiff was unable to purchase plumbing material on credit, and the defendant guaranteed the payment of the same and deducted the amount paid for such material as each payment was made. It also appears that the state made payment of eighty per cent of the amount due to the contractor every two weeks, and the contractor seems to have paid the subcontractors at the same time. There was a provision in the plaintiff's contract that the contractor for certain causes might declare the contract at an end, and thereupon the plaintiff's contract should cease and determine. Under this provision the defendant in June, 1887, declared the plaintiff's contract annulled, and thereafter refused to permit him to perform his contract. The material in controversy, the plaintiff claims, was in the building when the defendant took possession, and that it belonged to the plaintiff, and he was entitled to the imme-

diate possession of the same. The testimony shows that after the defendant excluded the plaintiff from the building in question and prevented him from performing his contract that he presented a bill to the plaintiff and his bondsmen, wherein he claimed that he had paid out for the plaintiff, for material for said building, the sum of $3,415, and that included the property in controversy, and that he had brought suit on the bond to recover the balance due for said material. This is nowhere denied. This being so, it is difficult to understand why the defendant also claims the right to the possession of the goods that, according to his own showing, were the property of the plaintiff and he and his sureties were liable for. It is claimed that the defendant had a lien upon the goods until they were fully paid for, and that, therefore, he was entitled to the possession under the lien, but the proof fails to show such lien or any arrangement that can be construed in that light. In no view of the case, therefore, can the judgment be sustained. The judgment is therefore reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.